J-S28037-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
DARYL VINCENT TAYLOR   :
  :
Appellant   :   No. 1081 EDA 2020

Appeal from the Judgment of Sentence Entered November 19, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003572-2018

BEFORE: BOWES, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:      **FILED SEPTEMBER 29, 2021**

Daryl Vincent Taylor (Taylor) appeals from the judgment of sentence imposed in the Court of Common Pleas of Philadelphia County (trial court) after his jury conviction for murder of the first degree and possession of an instrument of crime (PIC).[1] He challenges the sufficiency and weight of the evidence and alleges trial court error for charging the jury on flight/consciousness of guilt. We affirm.

We take the following factual background and procedural history from our independent review of the certified record.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a) and 907(a), respectively.

**I.**

At the November 12, 2019 jury trial, Taylor did not dispute that he stabbed the victim but argued that he had done so in self-defense. He testified that at the time of the incident, March 13, 2018, he and the victim, Cora May (May), had lived together romantically at a Philadelphia apartment for approximately two years. He stated that while in the bedroom asleep,[2] May was in the kitchen doing drugs,[3] came into the bedroom, woke him and angrily charged him with a knife. Believing May was going to kill or seriously injure him because she had previously hit him in the face with a pot, he reached for a knife on a nearby table from the bed, stood up and immediately began stabbing her. Taylor admitted that he did not try to protect himself or get away from May and that, even when she was raising her hands to protect herself, he continued stabbing her.

After May fell to the floor bleeding from the stab wounds, Taylor put on a hoody, a coat and sneakers, walked out of the apartment with the murder weapon and left her there. Once outside, Taylor threw the murder weapon on the roof and calmly called police to advise them that someone had been

---

[2] Taylor testified that he was weak because he had cancer, congestive heart failure and breathing problems. (**See** N.T. Trial, 11/15/21, at 17-19).

[3] May's autopsy results indicated that she had cocaine, opiates, benzodiazepine and PCP in her system. (**See** N.T. Trial, 11/13/19, at 98).

- 2 -

stabbed at 107 North Edgewood. (*See* N.T. Trial, 11/15/19, at 10-13, 20, 23, 26, 52-57, 63-65, 78-80).

Taylor walked approximately two blocks to the home of his friend, Gerald Kemp, and remained there for four hours. Shortly after Taylor's arrival, Kemp received a phone call from an individual who advised him that May had been stabbed. When Kemp asked Taylor if he had committed the stabbing, Taylor replied that he had not. However, he texted a friend, T.R., stating that he had stabbed her and asking if she had died. (*See* N.T. Trial, 11/14/19, at 52-55, 117-18, 121; NT. Trial, 11/15/19, at 28-29, 31, 66-68, 73).

Later, the police received a phone call from Taylor's neighbor reporting that screams had been heard. Upon arriving at the scene, the police observed May lying in Taylor's apartment unresponsive. She had multiple stab wounds to her face, chest, breast, shoulder, arms and hands. The medical examiner determined that the chest wound was approximately five inches deep and had punctured May's chest cavity. The police apprehended Taylor at Kemp's house there later that afternoon. He did not have any injuries. Taylor claimed at trial that he was about to turn himself into police immediately prior to the arrest. (*See* N.T. Trial, 11/13/19, at 56-70, 85-86, 195-99; N.T. Trial, 11/14/19, at 11-20, 33-34, 49).

After the close of evidence, the Commonwealth requested that the trial court give the flight/consciousness of guilt instruction based on Taylor leaving the scene and concealing his location after the murder. The trial court

provided the instruction over defense objection. The jury convicted Taylor of murder of the first degree and PIC, and the trial court sentenced him to a mandatory term of life imprisonment. On November 20, 2019, Taylor filed a post-sentence motion and a motion for reconsideration of sentence in which he sought a judgment of acquittal on the basis that the verdict was against the weight of the evidence. The trial court denied the post-sentence motions on January 3, 2020. Taylor appealed.[4]

Taylor argues that the evidence was insufficient to establish his guilt beyond a reasonable doubt, and the verdict was against the weight of the evidence where he established that he acted in self-defense and that the trial court erred in charging the jury on flight and consciousness of guilt.[5] (**See** Taylor's Brief, at 6, 11).

## II.

## A.

Taylor claims that the Commonwealth failed to present sufficient evidence[6] to prove his guilt of murder of the first degree and PIC beyond a

_____

[4] The trial court did not order Taylor to file a statement of errors or file a Rule 1925(a) opinion as the presiding trial judge is no longer on the bench. **See** Pa.R.A.P. 1925.

[5] We have reordered Taylor's issues for ease of disposition.

[6] In considering this issue, we observe:

*(Footnote Continued Next Page)*

reasonable doubt. Specifically, he maintains that the Commonwealth failed to prove he was the aggressor or that his belief that deadly force was necessary was unreasonable and, therefore, the Commonwealth did not disprove his claim that he acted in self-defense, thus failing to establish specific intent.

Pursuant to Section 2502 of the Crimes Code, "A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S. § 2502(a). "In order to prove first-degree murder, the Commonwealth must establish that: (1) a human being was killed; (2) the

---

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Ingram**, 926 A.2d 470, 473-74 (Pa. Super. 2007) (citation omitted).

accused caused the death; and (3) the accused acted with malice and the specific intent to kill." ***Commonwealth v. Sanchez***, 82 A.3d 943, 967 (Pa. 2013), *cert. denied*, 574 U.S. 860 (2014) (citation omitted)*.* "The jury may infer the intent to kill based upon the defendant's use of a deadly weapon on a vital part of the victim's body." ***Id.*** (citation omitted).

A defendant properly raises a claim of self-defense where the evidence supports findings that he (1) "reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm;" (2) did not provoke the use of force against himself; and (3) he "did not violate any duty to retreat." ***Commonwealth v. Mouzon***, 53 A.3d 738, 740 (Pa. 2012) (citations and brackets omitted); ***see also*** 18 Pa.C.S. § 505.[7] Once the defendant properly raises the question of self-defense, the Commonwealth may disprove the claim that the use of force was justified by establishing: "1) the [defendant] did not reasonably believe that he was in danger of death or serious bodily injury; 2) the [defendant] provoked or continued the force; or

_____

[7] Section 505(a) of the Crimes Code provides:

> (a) Use of force justifiable for protection of the person.—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

18 Pa.C.S. § 505(a).

- 6 -

3) the [defendant] had a duty to retreat and the retreat was possible with complete safety." ***Commonwealth v. Hammond***, 953 A.2d 544, 559 (Pa. Super. 2008) (internal citation and quotation marks omitted). The Commonwealth need only prove one of these elements beyond a reasonable doubt to sufficiently disprove a claim of self-defense. ***See Commonwealth v. Burns***, 765 A.2d 1144, 1149 (Pa. Super. 2000). It remains the province of the fact-finder to decide whether the defendant's belief was reasonable, whether he was free of provocation and whether he had a duty to retreat. ***See Commonwealth v. McClendon***, 874 A.2d 1223, 1229 (Pa. Super. 2005).

Taylor testified that he was in bed when May entered the bedroom threatening him with a knife and that he acted in self-defense when he then stabbed her repeatedly. The Commonwealth elicited testimony from him which cast doubt on his version of events; that May woke him by entering his bedroom yelling at him and wielding a knife and then, despite his allegedly weakened state due to health issues, he reached across to a table for another knife, jumped up and was able to stab her seven times without getting wounded once himself. Although he testified that he was afraid for his life because May was high on drugs and had hit him with a pot in the past, the Commonwealth also elicited testimony that he, at no point, tried to disarm his paramour, but instead immediately started stabbing her multiple times, including causing a five-inch wound that punctured her chest cavity.

First, the jury could reasonably infer that Taylor intended to kill May when he fatally stabbed her in the chest cavity. This alone established that Taylor did not act in self-defense. **See** **_Sanchez_**, **_supra_** at 967; **_Commonwealth v. Hinchcliffe_**, 388 A.2d 1068, 1071 (Pa. 1978), _cert. denied_, 439 U.S. 989 (1978) (holding where there is evidence from which a jury can reasonably infer malice, the Commonwealth has met its burden of proving beyond a reasonable doubt that defendant did not act in self-defense).

Furthermore, May had defensive wounds on her hands, with Taylor admitting that she tried to cover her face while he was stabbing her, which suggests that she was trying to protect herself. (**_See_** N.T. Trial, 11/15/19, at 55-56). Taylor did not sustain even one wound. (**_See id._** at 59). It was reasonable for the jury to infer that he did not reasonably believe that he was in imminent danger of death or serious bodily injury. **See** **_Hammond_**, **_supra_** at 559.

Finally, immediately after stabbing his paramour seven times and leaving her lying on the floor bleeding, he put on clothes and sneakers, left the scene and threw the murder weapon on the roof. Although he called police to report that there had been a stabbing at the address, he did not tell them May's identity or that he committed the act, whether in self-defense or otherwise. Instead, he went to a friend's house where he expressly denied stabbing May and stayed for four hours until the police located him there and arrested him. These are facts establishing Taylor's consciousness of guilt and

a conclusion that he was not justified in stabbing May to death. ***See***, ***e.g.***, ***Commonwealth v. Hughes***, 865 A.2d 761, 792 (Pa. 2004) (conduct of defendant after crime may be admitted showing guilt); ***Commonwealth v. Bradley***, 69 A.3d 253, 258-59 (Pa. Super. 2013) ("[D]efendant's attempts to cover up after a crime can be inferred to demonstrate a consciousness of guilt.").

When passing on the credibility of Taylor's version of events, it was for the jury, as fact-finder, to believe all, part or none of the evidence, including his self-serving testimony regarding self-defense, and we will not disturb its finding. After consideration of the record as a whole and all reasonable inferences therefrom in the light most favorable to the Commonwealth, we conclude that it produced sufficient evidence to establish that Taylor did not act in self-defense and instead had the specific intent to kill May. ***See*** ***Ingram***, ***supra*** at 473-74.

**B.**

Taylor also argues that the verdict was against the weight of the evidence.[8] He again maintains that it was established that he did not start

_____

[8] Our standard of review of this challenge is well-settled:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings

*(Footnote Continued Next Page)*

the confrontation with May, had no motive to kill her, reasonably believed

deadly force was necessary to protect himself against death or serious bodily

injury, and had no duty to retreat because he stabbed May at his home.[9]

<hr />

and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Horne***, 89 A.3d 277, 285 (Pa. Super. 2014), *appeal denied*, 102 A.3d 984 (Pa. 2014) (citation omitted). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." ***Commonwealth v. Widmer***, 744 A.2d 745, 753 (Pa. 2000) (citation omitted).

[9] The trial court denied Taylor's post-trial motion arguing the weight of the evidence without providing an explanation; nor was there a Rule 1925(a) opinion, as the trial judge has left the bench. However, after our own independent review of the record, we discern no manifestly unreasonable abuse of discretion where there is no evidence in the record that the court's decision was the "result of partiality, prejudice, bias or ill will." ***See Widmer***, ***supra*** at 753 (citation omitted).

Taylor also provides no pertinent law or discussion thereof in support of his weight claim other than boilerplate weight of the evidence law. Instead, he merely recites certain trial evidence and concludes that it supports his weight of the evidence arguments. (***See*** Taylor's Brief, at 12-15). Hence, this issue is waived. ***See*** Pa.R.A.P. 2101; 2119(a), (b); ***Commonwealth v. Russell***, 665 A.2d 1239, 1246 (Pa. Super. 1995) (declining to review claim where appellants stated why evidence was against weight of the evidence, warranting new trial, but failed to provide citation to relevant authority or discussion thereof). Moreover, it would not merit relief.

- 10 -

We are aware that a trial court may find that, "despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." ***Widmer***, ***supra*** at 752 n.3 (citation omitted). However, the only evidence supporting Taylor's self-defense claim was his own testimony, and the jury was free to believe all, some or none of it in making its credibility determination. ***See Ingram***, ***supra*** at 474; ***see also Commonwealth v. Bullock***, 948 A.2d 818, 824 (Pa. Super. 2008) (fact-finder not required to believe defendant who raises claim of self-defense). In reviewing the record, we cannot conclude that the trial court abused its discretion in failing to find that the jury's verdict was "so contrary to the evidence as to shock one's sense of justice." ***Commonwealth v. Sanchez***, 36 A.3d 24, 27 (Pa. 2011), *cert. denied*, 568 U.S. 833 (2012) (citation omitted); ***see also Horne***, ***supra*** at 285. Taylor's claim fails.

## C.

In his third issue, Taylor's one paragraph argument is that the trial court erred in giving a flight instruction to the jury because the Commonwealth failed to present sufficient evidence that a jury instruction on flight was justified.[10] He maintains that the charge was inappropriate where he

_____

[10] "In examining jury instructions, our standard of review is to determine whether the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case. A charge will be found adequate
*(Footnote Continued Next Page)*

- 11 -

conceded at trial that he committed the crime, and evidence showed that he called 911 after the incident and was about to surrender to police when they arrived at Mr. Kemp's house to arrest him. (*See id.* at 18-19).

"When a court instructs the jury, the objective is to explain to the jury how it should approach its task and the factors it should consider in reaching its verdict. Instructions on defenses or theories of prosecution are warranted when there is evidence to support such instructions." *Yachimowski*, *supra* at 865 (citation omitted). A flight/consciousness of guilt instruction is proper when the evidence supports a finding that "a person commits a crime, knows that he is wanted therefor, and flees or conceals himself." *Commonwealth v. Clark*, 961 A.2d 80, 92 (Pa. 2008) (citation omitted). "[S]uch conduct is evidence of consciousness of guilt, and may form the basis of a conviction in connection with other proof from which guilt may be inferred." *Id.* (citation and brackets omitted); *see also* Pa. SSJI (Crim) 3.14.

In this case, after fatally stabbing May, Taylor left their apartment, taking the murder weapon with him and throwing it onto a roof. He then went to his friend's home, denied stabbing May and stayed there until apprehended by police four hours later. This evidence supported the jury instruction. *See*

_____

unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error." *Commonwealth v. Yachimowski*, 232 A.2d 861, 865 (Pa. Super. 2020) (citation and brackets omitted).

*Yachimowski*, *supra* at 865. Although Taylor claimed that he was about to surrender to police at the exact moment they arrived to arrest him, this fact did not go to whether the instruction was proper, but was testimony for the jury to consider and weigh when making its credibility decision. Further, although Taylor claims that because he admitted at trial that he stabbed May and the jury instruction was improperly given, he provides no legal authority for this argument and we are not aware of any.[11]

Based on the foregoing, the court did not abuse its discretion or commit an error of law in charging the jury on flight/consciousness of guilt. *See Yachimowski*, *supra* at 865. This issue does not merit relief.

Judgment of sentence affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 9/29/2021*

---

[11] Taylor does not argue that he was prejudiced by this jury instruction. Even assuming *arguendo* that the court abused its discretion in charging the jury on flight/consciousness of guilt, there was evidence, beyond Taylor's flight from the premises, from which the jury could reasonably infer he intentionally stabbed May with the specific intent to murder her. Therefore, any claim of prejudice, even had he made it, would not have merited relief.